# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE R. HARDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-491-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jane R. Harden requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 11, 1973 and was thirty-five years old at the time of the administrative hearing (Tr. 29). She has a GED, completed basic EMT school (Tr. 29), and has worked as an apartment manager, cashier, gambling dealer, companion, and demonstrator (Tr. 54). The claimant alleges that she has been unable to work since July 1, 2006 due to severe depression and seasonal affective disorder, bipolar disorder, anxiety, panic attacks, fibromyalgia, muscle spasms, diverticulitis, irritable bowel syndrome, and gastritis (Tr. 37-49).

## Procedural History

On April 8, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 112-116). Her application was denied. ALJ Glenn A. Neel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 26, 2009 (Tr. 12-23). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour

workday. The ALJ also limited the claimant to understanding, remembering, and carrying out simple, one-step tasks and some detailed tasks that did not require intense concentration; working under routine supervision; and relating superficially to coworkers and supervisors, but not the general public (Tr. 16). The ALJ concluded that, although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, cleaner/housekeeper, packager, and bakery racker (Tr. 22).

## Review

The claimant contends that the ALJ erred (i) by ignoring probative evidence as to her mental impairments; and, (ii) by failing to properly determine her RFC. Because the ALJ does appear to have ignored probative evidence regarding the claimant's mental impairments, the decision of the Commissioner must be reversed.

The claimant was treated by Carl Albert Community Mental Health Center (CAMH) beginning in November of 2005, and she was discharged as a patient on June 20, 2006 (Tr. 307), and then resumed monthly treatment with CAMH in late 2006. The claimant had a crisis evaluation on December 15, 2006, and complained of worsening mood disturbance and anxiety, feelings of helplessness, hopelessness, and suicidal thoughts (Tr. 368). On January 3, 2007, the claimant reported depression and crying multiple times a day, daily worry, difficulty concentrating or remembering, and suicidal thoughts at least once a day, although she denied any plan or attempts (Tr. 366). At her January 31 therapy session, claimant reported being irritable, having occasional suicidal thoughts, continued anxiety in public, and two life/family stressors that she was

struggling to cope with (Tr. 363). On February 28, 2007, claimant reported that her mood had been good in the past two days, but that she had been depressed and stressed during the previous two weeks (Tr. 395). On March 28, the claimant reported that her mood had been fairly good, but she had been feeling drained and without motivation (Tr. 394). On April 25, claimant reported that she had been feeling better (Tr. 458). On May 23, claimant reported that her mood had been wonderful, and she had not been suicidal (Tr. 456). On July 25, claimant reported that her mood had been better in the past three days, but she had been stressed, frustrated, and angry during the past month, and she had been having difficulty sleeping (Tr. 452). A client assessment was performed that same day, and under "Feeling/Mood/Affect," the claimant reported that she had been depressed, angry, and frustrated, with difficulty sleeping, multiple crying spells, and daily anxiety. She reported that she was "somewhat better," because she had been in public four times that month (Tr. 472). Under "Thinking/Mental Process," the claimant reported negative thinking on four out of seven days, as well as excessive worry and anxiety (Tr. 472). Under "Role Performance," claimant reported that she felt she did a good job as a mother in that her children are fed and cared for, but she could do better at managing her home (Tr. 472). On August 24, claimant reported being in a good mood for two weeks, but feeling anxious and nervous and only sleeping three to four hours a night (Tr. 512). On September 28, the claimant reported stress, sleeping during the day, and being awake at night (Tr. 510). On October 29, claimant reported sleeping 12-16 hours a night, as well as having suicidal thoughts and no appetite (Tr. 507). On January 9, 2008, claimant reported frequent panic attacks and little appetite (Tr. 504). On February 6, she reported

depression and daily crying spells, as well as suicidal thoughts, withdrawing from everyone, anxiety, and nerves (Tr. 514). On March 18, 2008, claimant reported nightly panic attacks and difficulty sleeping, as well as a poor appetite (Tr. 521). On April 15, claimant reported depression and feelings of worthlessness, as well as poor motivation and feeling that she would be better off dead (Tr. 519). On September 12, claimant reported that she was pretty good, and that her motivation had improved and she was taking responsibility for her roles (Tr. 537). On October 22, claimant reported she had experienced a severe panic attack that had sent her to the emergency room, as well as increased anxiety and nervousness (Tr. 534). On November 18, claimant reported that her mood had not been good and that she had been physically ill (Tr. 533). The claimant also had frequent consultations with CAMH personnel as to her medications, their effectiveness, and any needed adjustments (Tr. 307-13, 354-98, 453-522, 533-41).

The ALJ found that the claimant's seasonal affective disorder and generalized panic/anxiety disorder with agoraphobia were severe impairments (Tr. 14). In his written decision, the ALJ noted that the claimant was treated at CAMH in 2005, and that she resumed treatment in late 2006. His description of her treatment at CAMH from late 2006 is as follows:

> Although at times she complained that her medications were ineffective, she has been compliant with her medication treatment and has reported that her prescribed medication ameliorates her symptoms. Upon July 25, 2007, assessment claimant reported that she was able to take care of her basic needs without difficulty and that she was 'doing a good job as her role as a mother,' seeing that her children were fed and cared for, but that she needed better motivation to manage her home. The fact claimant has not required hospitalization suggests that her condition is adequately controlled on medication.

(Tr. 16-17) [citations omitted]. However, he failed to mention the evidence from the *same page of the assessment* that she had only been in public four times in the previous month and the she still felt excessive worrying and anxiety, nor did he mention any observations of claimant's depression and anxiety from December 2006 until November 2008, including the fact that her depression worsened during the winter months. The ALJ then spent considerable time discussing the state consultative examiner's opinion (Tr. 17-19), who examined the claimant on November 29, 2006 and assigned her a global assessment of functioning ("GAF") score of 57 (Tr. 325-31). The ALJ concluded that the claimant was not under a totally disabling mental impairment (Tr. 19).

It was error for the ALJ to "pick and choose" a single statement from multiple assessments to support his finding that the claimant was not disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 381, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Because the ALJ failed to discuss probative evidence inconsistent with his RFC determination, the Court cannot determine whether he actually considered it. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Haga v. Astrue*, 482 F.3d 1205,

1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted]. Instead, the ALJ should have discussed the evidence supporting his decision and explained his rejection of the evidence that did not. *See, e. g., Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence."). Consequently, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of the claimant's mental RFC. If on remand there is any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma